# Exhibit 1

COPY

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **CORECIVIC OF** | ) | |
| **TENNESSEE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. _____** |
| | ) | **Jury Demand** |
| **UNIVERSAL STRATEGIC** | ) | |
| **ADVISORS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff CoreCivic of Tennessee, LLC ("CoreCivic") brings this action against Defendant Universal Strategic Advisors, LLC ("US Advisors") and states as follows:

### I. PARTIES

1.       CoreCivic is a Tennessee limited liability company with its principal place of business located at 5501 Virginia Way, Brentwood, Tennessee 37027.

2.       US Advisors is a California limited liability company with its principal place of business located at 25221 Calero Avenue, Laguna Hills, California 92653.

### II. JURISDICTION AND VENUE

3.       This Court has jurisdiction over the parties and over the subject matter of this action pursuant to TENN. CODE ANN. § 16-11-101, *et seq*. and TENN. CODE ANN. § 20-4-101, *et seq*.

4.       Venue is proper in this Court pursuant to TENN. CODE ANN. § 20-4-101.  The contract between CoreCivic and US Advisors provides that it "shall be governed by the laws of the State of Tennessee as to interpretation, construction, and performance and jurisdiction shall lie with the courts of Davidson County, Tennessee."

323005269.1

## III. FACTS

5.      Fundamentally, this is a case of betrayal.  Betrayal by CoreCivic's highly compensated consultant, US Advisors, who instead of acquiring a business opportunity for the company who was paying it to do so, secured the opportunity for itself.  Since November of 2020, US Advisors has been paid $30,000 a month – totaling $1.56 million through February 2025 – to consult with and develop business for CoreCivic with governmental entities, and particularly with US Immigration and Customs Enforcement ("ICE").  During that time, US Advisors was given access to CoreCivic's proprietary and confidential business concepts, information, and plans, and worked with CoreCivic in developing a proposal that was presented to ICE for services related to what is known as ICE's non-detained docket.  Unbeknownst to CoreCivic, while acting as CoreCivic's consultant and being highly compensated to do so, US Advisors communicated with ICE on its own behalf, submitted its own competing proposal to ICE, and just recently was awarded a $73 million contract – the very same contract for which US Advisors acted as CoreCivic's consultant.  US Advisors' misconduct violates its contract with CoreCivic and was recklessly, intentionally, and fraudulently done to usurp a business opportunity for itself.  CoreCivic has been and will continue to be damaged by US Advisors' misconduct for this lost business as well as future business, totaling hundreds of millions of dollars.

### A.      CORECIVIC

6.      Founded in 1983 in Nashville, Tennessee, CoreCivic owns and operates detention centers, jails, and prisons pursuant to contracts with federal, state, and local governments.  In addition to what may be considered its traditional business, CoreCivic also owns and operates residential reentry facilities that serve individuals released from incarceration, provides non-residential reentry services, provides transportation services through one of its subsidiaries, and

2

323005269.1

owns real estate, including correctional facilities and detention centers, that it leases to its governmental partners.

7.      Since its founding, CoreCivic has provided corrections and detention services to the federal government, having designed, built, managed, and operated correctional facilities and detention centers for ICE, the Federal Bureau of Prisons, and the United States Marshals Service across the country.

8.      Because of the large number of undocumented immigrants entering the United States over the past several years, CoreCivic recognized an opportunity to provide assistance to ICE beyond just detention services and specifically recognized an opportunity to help ICE manage its non-detained docket. The "non-detained docket" refers to the caseload encompassing various undocumented immigrants who are not in ICE detention, but who remain under the supervision of ICE personnel. The docket includes, for example, individuals released from detention on humanitarian grounds, bond, or parole; individuals undergoing immigration proceedings or awaiting removal following the conclusion of their immigration proceedings; as well as individuals classified as ICE fugitives or otherwise deemed removable from the United States.

9.      CoreCivic recognized the significant growth of ICE's non-detained docket and that this increase resulted in increased caseloads and a re-direction of ICE's frontline, enforcement-focused resources and personnel to administrative tasks. These tasks include interviewing, performing records checks, collecting documents, answering telephonic inquiries, filing documents, data entry, setting appointments, benefits and criminal history checks, and travel document requests, among other things (collectively, "case management services"). In other words, CoreCivic believed that providing case management services to ICE would allow ICE

323005269.1

personnel to spend more time in the field performing enforcement tasks and would decrease ICE time attending to paperwork and other administrative tasks.

10.     Recognizing the opportunity, and given its resources, personnel, and the depth of its experience in providing case management services on a broad scale in similar contexts, and even before the non-detained docket began growing at a rapid pace in 2020, CoreCivic began taking steps and developing ideas and plans to propose providing case management services to ICE, services for which ICE previously had not (for the most part) contracted with private parties.

**B.    CONTRACT WITH US ADVISORS**

11.     In furtherance of its plan to broaden the services it provided to its governmental partners, and specifically with ICE, on November 1, 2020, CoreCivic entered into a Consulting Agreement (the "Agreement") with US Advisors.  The Agreement initially was for a one-year term, but was extended by the parties for years beyond the initial term until US Advisors sent a letter by email on February 9, 2025, giving thirty-days written notice of termination as required by Section 2 of Agreement.  A true and correct copy of the Agreement is attached hereto as <u>Exhibit A</u>.  US Advisors' letter sent by email terminating the Agreement is attached hereto as <u>Exhibit B</u>.

12.     US Advisors is a consulting firm headed by Tim Robbins ("Robbins"), its Chief Executive Officer.  Prior to joining US Advisors, Robbins spent years of service in the federal government and held key leadership roles at ICE, including as Deputy Assistant Director for Targeting Operations and Acting Executive Associate Director for Enforcement and Removal Operations ("ERO").  ICE's non-detained docket is managed by ERO.

13.     Robbins is a longtime acquaintance of Bart Verhulst ("Verhulst"), Vice President of Federal Relations at CoreCivic.  Because of Robbins' experience, connections, and influence at

ICE, on behalf of CoreCivic, Verhulst sought out Robbins' help in expanding CoreCivic's relationships with ICE and other federal agencies by contracting with US Advisors.

14.    Per the Agreement, US Advisors was engaged to provide its "subject matter/domain expertise and advisory services in support of business development." Among other things, US Advisors specifically was engaged to "collaborate with CoreCivic to identify, shape, penetrate and win business within, but not exclusive to, The Department of Homeland Security (DHS) market." ICE is the federal law enforcement agency under the Department of Homeland Security.

15.    Per the Agreement, US Advisors was prohibited from engaging in any behavior that would constitute a conflict of interest, defined as "any circumstance where the interests of Consultant, its principals, employees or agents are in conflict with or adverse to CoreCivic, including, without limitation, where Consultant's service to another client or employer could reasonably be expected to result in a conflict or the appearance of a conflict of interest for CoreCivic or could reasonably be expected to result in a significant adverse impact on CoreCivic."

16.    Per the Agreement, US Advisors was prohibited from using any confidential or proprietary information of CoreCivic for any purpose other than its work on behalf of CoreCivic, with the Agreement specifying that "[a]ll confidential or proprietary information…shall remain the sole and exclusive property of CoreCivic." The Agreement defined confidential and proprietary information as "[a]ll confidential or proprietary information, including but not limited to, any programs, plans or designs whether in hard copy or electronic format developed by, at the direction of, or with the assistance and/or collaboration of Consultant during her (sic) consulting work for CoreCivic, contract terms, financial information, operating data, staffing patterns, wage levels, quality assurance audit materials and techniques, customer lists, supplier lists, pricing policies, marketing plans, business plans or models, marketing or lobbying information and all

323005269.1

other information (the "Confidential & Proprietary Information"), and all other tangible or intangible items or ideas making up the Confidential & Proprietary Information owned or developed by or related to CoreCivic, and the goodwill associated with them, which is not generally available to the public."

17.     Per the Agreement, US Advisors was required to submit monthly invoices to CoreCivic for its consulting services, and CoreCivic was required to pay US Advisors $30,000 per month for services provided.  US Advisors submitted monthly invoices to CoreCivic for its consulting services until its last invoice submitted on March 3, 2025.  CoreCivic paid all the invoices.    From the inception of the Agreement, the amount paid by CoreCivic to US Advisors totals $1,560,000.

### C.     CoreCivic / US Advisors Work on the Non-Detained Docket Proposal

18.     After execution of the Agreement, US Advisors, and specifically Robbins, was made privy to and brought into CoreCivic's strategies, ideas, and plans to identify, shape, penetrate, and win business from ICE with respect to the non-detained docket.

19.     As expected, US Advisors' and thus Robbins' role was integral.  Robbins met and communicated regularly with CoreCivic management and personnel about the non-detained docket.  He communicated with ICE on a regular basis.  He had access to CoreCivic's confidential and proprietary information, including programs, designs, financial information, operating data, proposed staffing, wage levels, pricing, marketing and lobbying plans, business plans and models, and anything else that he needed or requested.

20.     Ultimately, with Robbins playing a significant part, CoreCivic submitted a proposal to ICE in 2023 for case management services for the non-detained docket.  Robbins helped develop

323005269.1

the proposal. He had numerous discussions and communications with CoreCivic about the proposal. And, he was involved with CoreCivic in presenting the proposal in person to ICE.

21. This same proposal was re-submitted by CoreCivic to ICE in August 2024 and again in January 2025, with some updates and revisions. US Advisors and Robbins consulted with and advised CoreCivic regarding the updates and revisions to the re-submitted proposals.

**D.     US Advisors' Secret Submission of its Own Proposal to ICE**

22. After the Inauguration in January 2025, CoreCivic received feedback that ICE was interested in its proposal regarding the non-detained docket.

23. Out of the blue, on Sunday, February 9, 2025, CoreCivic received a letter from US Advisors terminating the Agreement on thirty-days' notice pursuant to Section 2 of the Agreement. With thirty-days' notice, the termination would become effective March 11, 2025.

24. During the week of March 10, 2025, and much to its shock and dismay, CoreCivic learned that US Advisors and Robbins – while still under contract with and being paid by CoreCivic – had submitted a proposal of their own to ICE for the same case management services as those proposed by CoreCivic.

25. On March 13, 2025, US Advisors' proposal was accepted, and it received a $73 million contract award from ICE.

## COUNT I – BREACH OF CONTRACT

26. The above paragraphs are incorporated herein by reference.

27. The Agreement is a valid and enforceable contract and was in full force and effect at all relevant times.

28. Among other things, the Agreement required that US Advisors seek business from ICE on behalf of CoreCivic, including but not limited to work on the non-detained docket.

7

EFILED 04/04/25 03:19 PM CASE NO. 25C975 Joseph P. Day, Clerk

29. The Agreement prohibited US Advisors from engaging in any conflict of interest, including seeking work on its own behalf or on behalf of others that would be in conflict with or adverse to CoreCivic and that reasonably could be expected to result in a significant adverse impact on CoreCivic.

30. The Agreement also prohibited US Advisors from using any confidential or proprietary information of CoreCivic for any purpose other than its work on behalf of CoreCivic.

31. US Advisors submitted a proposal to ICE that violated its obligations under the Agreement as well as the Agreement's prohibitions against conflicts of interest and the use of CoreCivic's confidential and proprietary information.

32. As a direct and proximate result of US Advisors' breach, CoreCivic has and will continue to suffer substantial damages. Damages include, but are not limited to, lost profits on the contract ICE awarded US Advisors rather than CoreCivic, which totals tens of millions of dollars, and lost future business from ICE for non-detained docket work worth at least hundreds of millions of dollars.

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

33. The above paragraphs are incorporated herein by reference.

34. US Advisors knew that CoreCivic had not been involved in the non-detained docket and that it had been CoreCivic's goal to break into that line of work. CoreCivic engaged US Advisors, and specifically Robbins, to help it find a way in. In short, US Advisors knew that it was hired to help bring that opportunity to CoreCivic.

35. Over the course of its contractual arrangement with CoreCivic, US Advisors and Robbins played an integral role in CoreCivic's development, preparation, and presentation of its proposal to ICE to provide case management services for the non-detained docket. US Advisors

8

323005269.1

and Robbins knew that CoreCivic was relying upon them to act on its behalf with ICE. Instead, US Advisors and Robbins were surreptitiously acting on their own behalf with ICE.

36.     US Advisors and Robbins knew of the prospective business relationship between ICE and CoreCivic for the non-detained docket and, nonetheless, with the intent to cause the termination of that relationship, recklessly, intentionally, and fraudulently submitted a proposal to ICE for the very purpose of defeating CoreCivic's proposal and thus usurping the opportunity they were required to seek on CoreCivic's behalf.

37.     As a direct result of US Advisors' reckless, intentional, and fraudulent misconduct, CoreCivic has and will continue to suffer substantial damages. Damages include, but are not limited to, lost profits on the contract ICE awarded US Advisors rather than CoreCivic, which totals tens of millions of dollars, and lost future business from ICE for non-detained docket work worth at least hundreds of millions of dollars. Punitive damages are also appropriate to punish US Advisors for its misconduct and as a deterrent.

### C. COUNT III – BREACH OF FIDUCIARY DUTY

38.     The above paragraphs are incorporated herein by reference.

39.     By virtue of the Agreement and with respect to the purposes for which it was hired, US Advisors was required to act with the utmost good faith, loyalty, honesty, and care with respect to its obligations to CoreCivic. In short, for as long as they remained in the relationship, US Advisors had a fiduciary duty to act in CoreCivic's interest, not its own, and certainly not in a manner adverse to CoreCivic's interest.

40.     US Advisors recklessly, intentionally, and fraudulently submitted a proposal to ICE that violated its duties to its client and served its own purposes.

9

323005269.1

41.     As a direct result of US Advisors' reckless, intentional, and fraudulent misconduct, CoreCivic has and will continue to suffer substantial damages.  Damages include, but are not limited to, lost profits on the contract ICE awarded US Advisors rather than CoreCivic, which totals tens of millions of dollars, and lost future business from ICE for non-detained docket work worth at least hundreds of millions of dollars.  Punitive damages are also appropriate to punish US Advisors for its misconduct and as a deterrent.

## V. **PRAYER FOR RELIEF**

CoreCivic requests the following relief:

1.     A money judgment for compensatory and punitive damages against US Advisors in an amount not less than $500,000,000, plus pre-judgment and post-judgment interest;

2.     An award of reasonable attorneys' fees, costs, and expenses; and

3.     Such other and further relief as the Court deems just and proper.

CORECIVIC DEMANDS A JURY TO TRY THE ISSUES.

Respectfully submitted,

/s/ Joseph F. Welborn III
Joseph F. Welborn III (#15076)
joe.welborn@klgates.com
Erin Palmer Polly (#22221)
erin.polly@klgates.com
Jack C. Whitfield (#42421)
jack.whitfield@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6700
(615) 780-6799

*Counsel for Plaintiff CoreCivic of*
*Tennessee, LLC*

10

323005269.1

COPY

DocuSign Envelope ID: 0E36D715-6B5D-4BF9-9962-B0A37DC9429C

## AGREEMENT

## BY AND BETWEEN

## UNIVERSAL STRATEGIC ADVISORS, LLC

## AND

## CORECIVIC OF TENNESSEE, LLC

**THIS AGREEMENT** is made and entered into by and between **UNIVERSAL STRATEGIC ADVISORS, LLC ("Consultant" or "US Advisors")**, a California limited liability company whose address is 25221 Calero Avenue, Laguna Hills, California 92653 and **CORECIVIC OF TENNESSEE, LLC,** a Tennessee limited liability company, **("CoreCivic")** located at 5501 Virginia Way, Suite 110, Brentwood, Tennessee 37027. Consultant and CoreCivic are alternatively referred to herein, individually as a "party" and collectively as the "parties".

## R E C I T A L S:

**WHEREAS**, the CoreCivic has, subject to the terms and conditions of this Agreement, agreed to retain the Consultant to provide CoreCivic certain expertise and perform certain services as an independent contractor; and

**WHEREAS,** Consultant specializes in has certain expertise regarding re-entry services; and

**WHEREAS,** CoreCivic seeks to protect its business and prevent Consultant from using confidential or proprietary information to compete with CoreCivic;

**NOW, THEREFORE**, CoreCivic and the Consultant hereby agree as follows:

## 1. CONSULTANT'S SERVICES AND REPRESENTATIONS

Consultant has been retained as an independent contractor to provide the consulting services generally set forth in **Exhibit 1** (the "Services") and is to abide by any restrictions set forth. Consultant represents and warrants that Consultant has the requisite training, education, experience and expertise to provide the Services. Consultant has, and will continue to maintain, valid licensure and/or authority, if any is required, to perform the Services. Consultant agrees to provide confirmation of any such authority and/or licensure and good standing to CoreCivic, upon request. Independent Consultant will immediately notify CoreCivic of any non-renewal, suspension, revocation, or complaint that could affect the standing of such license and/or authority.

Consultant represents and warrants that the Consultant is not bound by any agreement with any person or entity that would: (a) in any way limit the Consultant's ability to perform the Services, (b) be breached as a result of the Consultant's signing this Agreement or (c) would be breached as a result of CoreCivic's decision to retain the Consultant pursuant to this Agreement.

The Consultant represents and warrants that the Consultant does not possess any confidential, proprietary and/or trade secret information that is owned by or the property of any other person or

EFILED 04/04/25 03:19 PM  CASE NO. 25C975  Joseph P. Day, Clerk

entity, and that the Consultant will not use any confidential, proprietary and/or trade secret information owned by or belonging to any other person or entity, in connection with the Services to be performed by the Consultant pursuant to this Agreement.

## 2. TERM AND TERMINATION

This Agreement will be effective as of November 1, 2020 will terminate on November 1, 2021 (the "Term"). The parties may amend to extend the term of this Agreement.

Either party may: (1) terminate this Agreement upon the other party's Material Breach of the Agreement, provided that not less than thirty (30) days' written notice of such termination is provided to the other party, and there is no cure satisfactory to the non-breaching party within that thirty (30) day period; or (2) with notice of termination or nonrenewal with not less than thirty (30) days' written notice.

Material Breach for purposes of this Agreement includes, but is not limited to, failure to perform, failure to provide appropriate documentation or accurate invoicing of services performed, dishonesty, misrepresentation, or failure to maintain required licensure or authority.

## 3. COMPENSATION

Consultant will submit an invoice for the Services outlined in **Exhibit 1** on a monthly basis describing the Services performed for the monthly retainer as set forth in **Exhibit 2**. Contractor shall submit a detailed invoice to CoreCivic monthly, describing the work performed for the previous month's work. CoreCivic will remit undisputed payment to Consultant within thirty (30) days of receipt of the monthly invoice.

## 4. MATERIALS, EQUIPMENT AND SUPPLIES.

Consultant will provide any materials, equipment or supplies necessary to provide the Services, CoreCivic has no obligation to provide funding or reimburse Consultant for any materials, equipment or supplies.

## 5. INDEPENDENT CONTRACTOR STATUS

The Consultant is, and will remain, an independent contractor performing professional services for CoreCivic. Consultant will work the number and schedule of hours to be determined by Consultant reasonably necessary to perform the Services. Consultant is free to engage in any other work, employment, independent contractor services, consulting services, or jobs of Consultant's own choosing, so long as such services do not violate the confidentiality, conflicts of interest or other competition restrictions set forth in this Agreement.

Consultant and CoreCivic acknowledge and agree to the following rights and duties consistent with an independent contractor relationship: (1) Consultant retains the right to perform services for others during the term of this Agreement pursuant to Section 7. Conflicts of Interest; (2) Consultant will perform the Services according to usual and customary standards of care in Consultant's profession; (3) CoreCivic shall not hire, supervise, or pay any assistants of Consultant; (4) CoreCivic will not require Consultant to devote full time to performing the

Services; (5) CoreCivic will not provide any particular amount of work or a regular schedule to Consultant.

This Agreement does not constitute an employment agreement. Consultant should not represent himself as a CoreCivic employee. Consultant is not CoreCivic's employee for any purpose, including but not limited to eligibility for employee benefits, pension, medical, paid time off or other benefits, if any, provided to CoreCivic's employees, the application of the Fair Labor Standards Act, Federal Insurance Contribution Act, Social Security Act, Federal Unemployment Tax Act, the Internal Revenue Code, State revenue and taxation laws, the State workers' compensation laws, and State unemployment insurance laws, state or federal civil rights laws, or any other laws providing rights to employees.

Consultant should not represent himself as a CoreCivic employee. The Consultant agrees not to purport to bind CoreCivic to any obligation not assumed herein by CoreCivic unless the Consultant has express written authority to do so, and then only within the strict limitations of that authority.

## 6. TAX LIABILITY

Consultant warrants that Consultant files, and will continue to file, the necessary forms and payments with the State and Federal tax authorities establishing Consultant's independent contractor status. Consultant will pay all Federal and State taxes, including self-employment taxes, attributable to amounts paid to Consultant pursuant to this Agreement. Should Consultant be held not to be an independent contractor, Consultant will indemnify CoreCivic for any losses or payments CoreCivic may be required to make, including penalties and interest, if any, and save CoreCivic harmless from all additional costs and expenses arising out of such breach.

## 7. CONFLICTS OF INTEREST

Consultant warrants that, as of the date of this Agreement, no conflict of interest exists or is likely to arise in the performance of its obligations under the Agreement. If, during the term of the Agreement, a conflict or the risk or appearance of a conflict of interest arises, Consultant agrees to promptly notify CoreCivic in writing (through the Managing Director of Operations, who serves as Consultant's primary business contact with CoreCivic) of the conflict of interest. Unless CoreCivic waives the conflict or consents to the circumstances giving rise to the conflict in writing, Consultant agrees promptly to take any steps that CoreCivic requires to resolve the conflict. For purposes of this Agreement, a conflict of interest means any circumstance where the interests of Consultant, its principals, employees or agents are in conflict with or adverse to CoreCivic, including, without limitation, where Consultant's service to another client or employer could reasonably be expected to result in a conflict or the appearance of a conflict of interest for CoreCivic or could reasonably be expected to result in a significant adverse impact on CoreCivic (for example, adverse media attention) due to CoreCivic's association with Consultant.

## 8. CONFIDENTIAL INFORMATION PROTECTIONS

All confidential or proprietary information, including but not limited to, any programs, plans or designs whether in hard copy or electronic format developed by, at the direction of, or with the assistance and/or collaboration of Consultant during her consulting work for CoreCivic, contract terms, financial information, operating data, staffing patterns, wage levels, quality assurance audit

materials and techniques, customer lists, supplier lists, pricing policies, marketing plans, business plans or models, marketing or lobbying information and all other information (the "Confidential & Proprietary Information"), and all other tangible or intangible items or ideas making up the Confidential & Proprietary Information owned or developed by or related to CoreCivic, and the goodwill associated with them, which is not generally available to the public, shall remain the sole and exclusive property of CoreCivic. Not in limitation of any of the foregoing, trade secrets shall have the same meaning as the definition under the Uniform Trade Secrets Act (TN CODE ANN. 47-25-1701 ET SEQ.). Such information derives actual or potential independent economic value from not being generally known to the public or other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

## 9. COMPLIANCE WITH LAWS

Consultant agrees to perform the Services in compliance with all applicable laws, including any equal employment opportunity/affirmative action requirements that are applicable to Consultants of CoreCivic. During the performance of this Agreement, Consultant, to the extent applicable, and CoreCivic agree as follows:

(1) The Parties will not discriminate against any employee or applicant for employment because of race, color, religion, sex, sexual orientation, gender identity, or national origin. The Consultant will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, sexual orientation, gender identity, or national origin. Such action shall include, but not be limited to the following: Employment, upgrading, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Parties agree to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

(2) The Parties will, in all solicitations or advertisements for employees placed by or on behalf of the Consultant, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, sexual orientation, gender identity, or national origin.

To the extent required by applicable laws and regulations, this Agreement also includes and is subject to (i) Executive Order 11738 requiring certification of compliance with environmental regulations, (ii) the affirmative action clauses concerning Disabled Veterans of the Vietnam Era (41 CFR 60-250) and employment of the Handicapped (41 CFR 60-741), (iii) Executive Order 13496, Notification of Employee Rights under the National Labor Relations Act, and (iv) Executive Order 12989, Economy and Efficiency in Government Procurement Through Compliance With Certain Immigration and Naturalization Act Provisions. All rules, regulations and orders associated with the foregoing, and all appropriate clauses, including but not limited to FAR 52.222-40 and FAR 52.222-54, are deemed incorporated herein by reference.

Consultant further agrees to comply with all applicable CoreCivic policies and procedures, including but not limited to, CoreCivic Policy and Procedure 3-3, Standards of Business Ethics and Conduct (available via CoreCivic's website at: http://www.corecivic.com/CoreCivic-resource-center/).

## 10. INDEMNIFICATION

Consultant shall insure, defend, indemnify and hold harmless CoreCivic, its agents, officers and employees from any claims, demand, cause of action, expenses or liabilities, including related attorney fees and litigation costs arising from its performance of the Services. Counsel retained by Consultant for the purposes of this provision shall be subject to approval by CoreCivic. Consultant hereby assumes the entire responsibility for any and all damages or injury of any kind or nature whatsoever to all persons and all property arising out of the work performed by Consultant in connection with this Agreement. Consultant is solely responsible to maintain vehicle or other liability insurance for Consultant's conduct in the performance of the Services.

## 11. NOTICE

All notices, designations, consent, offers, acceptances or any other communication provided for herein required to be in writing shall be given by registered, certified mail, return receipt requested, or by personal delivery via an express letter service that provides evidence of delivery and receipt, and addressed to the parties as shown below:

**Consultant:**

> Universal Strategic Advisors, LLC
> 25221 Calero Avenue
> Laguna Hills, California 92653
> bdemore@ustrada.com

**CoreCivic:**　　Attn: General Counsel
> CoreCivic of Tennessee, LLC
> 5501 Virginia Way, Suite 110
> Brentwood, Tennessee 37027

## 12. THIRD PARTY RIGHTS

The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights on any other person.

## 13. GOVERNING LAW

This Agreement shall be governed by the laws of the State of Tennessee as to interpretation, construction, and performance and jurisdiction shall lie with the courts of Davidson County, Tennessee.

EFILED 04/04/25 03:19 PM CASE NO. 25C975 Joseph P. Day, Clerk

DocuSign Envelope ID: 0E36D715-6B5D-4BF9-9962-B0A37DC9429C

### 14. ASSIGNMENT

Consultant shall not assign or transfer any interest in this Agreement without the prior written approval of CoreCivic. Any assignment in violation of the foregoing shall be deemed null and void. CoreCivic retains the right to freely assign or subcontract this Agreement to any CoreCivic affiliate, without notice to or consent from Consultant.

### 15. INVALIDITY AND SEVERABILITY

In the event that any provision of this Agreement shall be held to be invalid, such provision shall be null and void, and the validity of the remaining provisions of the Agreement shall not in any way be affected thereby.

### 16. AMENDMENTS

This Agreement may be amended, changed or modified only by written agreement executed by the parties hereto. No waiver of any provision of the Agreement shall be valid unless in writing and signed by the party charged.

### 17. COUNTERPARTS

This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which shall constitute one Agreement, notwithstanding that all parties are not signatories to the original or the same counterpart, or that signature pages from different counterparts are combined, and the signature of any party to any counterpart shall be deemed to be a signature too and may be appended to any other counterpart.

Delivery of an executed counterpart of the signature page of this Agreement by facsimile transmission or by email in PDF format shall be effective as delivery of a manually executed counterpart. Any party so executing this Agreement by facsimile transmission or by email in PDF format shall promptly deliver a manually executed counterpart, provided that any failure to do so shall not affect the validity of the counterpart executed by facsimile transmission or by email in PDF format. A signed facsimile or emailed PDF of this Agreement shall be enforceable as a signed original.

### 18. SCOPE OF AGREEMENT

This Agreement incorporates all agreements, covenants, and understandings between the parties hereto concerning the subject matter hereof. No prior agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement.

TIME IS OF THE ESSENCE IN THE PERFORMANCE OF ALL THE PARTIES' OBLIGATIONS AND DUTIES UNDER THIS AGREEMENT.

[Signature Page Follows]

COPY

**IN WITNESS WHEREOF,** intending to be legally bound, the parties have caused their authorized representative to execute this Agreement.

**UNIVERSAL STRATEGIC ADVISORS, LLC:**

**BY:** *Brian M. DeMore*
DocuSigned by:
3739D468D0234CB...

**NAME:** Brian M. DeMore

**TITLE:** Principal

**Federal ID # or Social Security #:** ▆▆▆▆▆▆

**CORECIVIC OF TENNESSEE, LLC:**

**BY:**
DocuSigned by:
AB5691F257D4494...

**NAME:** Bart Verhulst

**TITLE:** Vice President Federal & Local Partnership Relations

COPY

**EXHIBIT 1 – GENERAL CONSULTANT SERVICES**

The Consultant will be responsible for providing subject matter/ domain expertise and advisory services in support of business development. Specifically, US Advisors will provide these Services to CoreCivic with the primary intent of obtaining and maintaining detention contracts with local, state and federal government entities. US Advisors will collaborate with CoreCivic to identify, shape, penetrate and win business within, but no exclusive to, The Department of Homeland Security (DHS) market. Upon express written mutual agreement, US Advisors will operate as a teaming partner and/or engage in joint venture opportunities. These opportunities may include, but are not limited to Transportation services, Alternatives to Detention (ATD), Halfway Houses, Processing Centers, and Foreign or outside of the contiguous United States (OCONUS) opportunities and other opportunities yet to be determined.

Consultant shall specifically pursue the following objectives:

a) Collaboration and identification of specific opportunities of focus based upon new laws, regulations, or policies;

b) Work with the nongovernmental organization (NGO) community and other stakeholders to identify collaborative projects that will allow CoreCivic to expand its offerings and services;

c) Ongoing identification of publicly available opportunities within CoreCivic's domain expertise;

d) Ongoing engagement of customers (existing and new);

e) Engagement of potential teaming partners;

f) Identification of leading-edge solutions and differentiators;

g) Pre-solicitation engagement of contracting offices and officers;

h) Shaping of opportunities for specific contract vehicles;

i) Review and supplement of CoreCivic's employee training to determine best practices as well as practical enhancements to curriculum;

j) Identify positive public relations opportunities to enhance CoreCivic's corporate image and dispel myths about the private corrections industry;

k) Provide key analysis of pending and proposed legislation affecting the detention industry;

l) Consult on implementation of ICE's Performance Based National Detention Standards or any subsequent standard adopted by ICE; and

m) Perform other tasks as CoreCivic may, from time to time, assign the Consultant.

COPY

**EXHIBIT 2 – The Retainer**

Under the terms and conditions set forth in the Agreement, CoreCivic will pay the Consultant a retainer of Thirty Thousand Dollars ($30,000.00) per month as compensation for the Services. The parties will review Consultant's Services provided on a regular basis and may adjust the retainer as mutually agreed-upon in writing by amending this Exhibit 2.

The Retainer will be treated as 1099 income to the Contractor in accordance with the terms and conditions of the Agreement.

COPY

**From:** Brian DeMore <bdemore@ustrata.com>
**Date:** Sunday, February 9, 2025 at 1:19 PM
**To:** Bart Verhulst <bart.verhulst@corecivic.com>
**Subject:** Termination of Agreement

Mr. Verhulst,

Please find attached written notification related to the termination of our agreement due to a potential Organizational Conflict of Interest (OCI) issue identified by US Advisors. We have greatly appreciated the excellent working relationship shared by our companies and wish you continued success in the future.

Sincerely,

Brian M. DeMore
President
Universal Strategic Advisors LLC

EFILED 04/04/25 03:19 PM  CASE NO. 25C975  Joseph P. Day, Clerk

**EXHIBIT B**

COPY



Attn: General Counsel
CoreCivic of Tennessee, LLC
550 I Virginia Way, Suite 110
Brentwood, Tennessee 37027

Dear General Counsel,

This letter shall serve as proper thirty (30) days written notice in accordance with Section 2 of
the Agreement by and between Universal Strategic Advisors, LLC and CoreCivic of
Tennessee, LLC with an effective date of February 28, 2025 (the "Agreement"), that Universal
Strategic Advisors, LLC is hereby terminating the Agreement.

Sincerely,

Brian M. DeMore
President

**Phone:** (949) 216-8701 | **Email:** bdemore@ustrata.com | **Website:** www.ustrata.com

EFILED 04/04/25 03:19 PM CASE NO. 25C975 Joseph P. Day, Clerk

COPY

CIRCUIT COURT SUMMONS                                                    NASHVILLE, TENNESSEE

# STATE OF TENNESSEE
# DAVIDSON COUNTY
## 20™ JUDICIAL DISTRICT

Service ID 506562

CORECIVIC OF TENNESSEE LLC

                                                              Plaintiff

vs.

UNIVERSAL STRATEGIC ADVISORS LLC
C/O NATIONAL REGISTERED AGENTS INC
330 N BRAND BOULEVARD
GLENDALE, CA 91203

                                                              Defendant

CIVIL ACTION
DOCKET NO. 25C975
Method of Service:
  Certified Mail

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303 , and your defense must be made within thirty (30) days from the date this Summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the Complaint.

ISSUED: 04/07/2025

JOSEPH P. DAY
Circuit Court Clerk
Davidson County, Tennessee

By: _____

_____
Deputy Clerk

ADDRESS OF PLAINTIFF'S ATTORNEY OR PLAINTIFF:

JOSEPH WELBORN
501 COMMERCE STREET
SUITE 1500
NASHVILLE, TN 37203

NOTICE TO THE DEFENDANT:
Tennessee law provides a Ten Thousand and 00/100 Dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## CERTIFICATION

STATE OF TENNESSEE  )
COUNTY OF DAVIDSON  )

I, Joseph P. Day, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

rev. 09/01/2022

Service ID 506562

COPY



JOSEPH P. DAY, CLERK

By: _Zul Rogers_      D.C.

To request an ADA accommodation, please contact Trey Collier at (615) 880-3309

Service ID 506562

rev. 09/01/2022

COPY

CIRCUIT COURT SUMMONS                                      NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᵀᴴ JUDICIAL DISTRICT

Service ID 506562

CORECIVIC OF TENNESSEE LLC

                                                          CIVIL ACTION
                                                          DOCKET NO. 25C975
                                                          Method of Service:
                                                           Certified Mail
                                          Plaintiff

vs.

UNIVERSAL STRATEGIC ADVISORS LLC
C/O NATIONAL REGISTERED AGENTS INC
330 N BRAND BOULEVARD
GLENDALE, CA 91203

                                          Defendant

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20____, I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the Summons and a copy of the Complaint/Petition in Docket No. 25C975 to the Defendant, UNIVERSAL STRATEGIC ADVISORS LLC . On the _____ day of _____, 20___, I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20___. Said return receipt is filed with the original Summons Return and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME, ON THIS
PERSON

_____ DAY OF _____, 20____.

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY or OTHER

AUTHORIZED BY STATUTE TO SERVE PROCESS

_____
_____ NOTARY PUBLIC or _____DEPUTY CLERK
MY COMMISSION EXPIRES: _____

To request an ADA accommodation, please contact Trey Collier at (615) 880-3309

rev. 09/01/2022

Service ID 506562

COPY

EFILED 04/07/25 09:13 AM CASE NO. 25C975 Joseph P. Day, Clerk

CIRCUIT COURT SUMMONS                                           NASHVILLE, TENNESSEE

Service ID 506562

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᵀᴴ JUDICIAL DISTRICT

CORECIVIC OF TENNESSEE LLC

                                                    CIVIL ACTION
                                                    DOCKET NO. 25C975
                                  Plaintiff         Method of Service:
                                                        Certified Mail

vs.

UNIVERSAL STRATEGIC ADVISORS LLC
C/O NATIONAL REGISTERED AGENTS INC
330 N BRAND BOULEVARD
GLENDALE, CA 91203

                                  Defendant

Service ID 506562

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the __14th__ day of __April__, 20_25_ I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the Summons and a copy of the Complaint/Petition in Docket No. 25C975 to the Defendant, UNIVERSAL STRATEGIC ADVISORS LLC . On the _25th_ day of __April__, 20_25_, I received the return receipt for said registered or certified mail, which had been signed by U.S. Post Office as Delivered, Individual Picked Up at Postal Facility / Delivery Service on the _18th_ day of __April__, 20_25_. Said return receipt is filed with the original Summons Return and both documents are being sent herewith to the Circuit Court Clerk for filing.

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY or OTHER

SWORN TO AND SUBSCRIBED BEFORE ME, ON THIS
PERSON
1ˢᵗ DAY OF May, 2025.

AUTHORIZED BY STATUTE TO SERVE PROCESS

_Maura Ann Nelson_
____ NOTARY PUBLIC or ____ DEPUTY CLERK
MY COMMISSION EXPIRES: 10.04.2027

    To request an ADA accommodation, please contact Trey Collier at (615) 880-3309



rev. 09/01/2022

EFILED 05/02/25 01:02 PM CASE NO. 25C975 Joseph P. Day, Clerk

COPY



Return Receipt (Form 3811) Barcode

9590 9266 9904 2214 9137 85

1. Article Addressed to:
Universal Strategic Advisors, LLC
c/o National Registered Agents, Inc
330 N. Brand Boulevard, Suite 700
Glendale, CA 91203

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:         ☐ No

APR 1 8 2025

3. Service Type:
☒ Certified Mail

Reference Information

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2214 9137 82

PS Form 3811, Facsimile, July 2015                    Domestic Return Receipt



USPS TRACKING #

9590 9266 9904 2214 9137 85

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service®      • Sender: Please print your name, address and ZIP+4® below •

Joseph Welborn
K & L Gates
501 Commerce St.
Suite 1500
Nashville, TN 37203

EFILED  05/02/25 01:02 PM  CASE NO. 25C975  Joseph P. Day, Clerk

COPY

EFILED 05/02/25 01:02 PM CASE NO. 25C975 Joseph P. Day, Clerk

**Tracking Number:**

## 9414726699042214913782

 Copy    Add to Informed Delivery

**Latest Update**

Your item was picked up at a postal facility at 12:30 pm on April 17, 2025 in GLENDALE, CA 91209.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

● **Delivered**
**Delivered, Individual Picked Up at Postal Facility**
GLENDALE, CA 91209
April 17, 2025, 12:30 pm

● **Out for Delivery**
GLENDALE, CA 91203
April 17, 2025, 12:04 pm

● **Arrived at Post Office**
GLENDALE, CA 91209
April 17, 2025, 11:53 am

● **Arrived at USPS Regional Facility**
SANTA CLARITA CA DISTRIBUTION CENTER
April 16, 2025, 3:43 am

● **In Transit to Next Facility**
April 15, 2025

323152415.1